UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IRON MAIDEN HOLDINGS, LTD.,<br><br>PLAINTIFF,<br><br>v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A,<br><br>DEFENDANTS. | CASE NO.: 1:22-CV-00633<br><br>JUDGE SARA L. ELLIS<br><br>MAGISTRATE JUDGE M. DAVID WEISMAN |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT
<u>AGAINST THE DEFENDANTS IDENTIFIED ON SCHEDULE A</u>**

Plaintiff, Iron Maiden Holdings, Ltd., ("IMH" or "Plaintiff") submits the following memorandum in support of its Motion for Entry of Default and Default Judgment under Fed. R. Civ. P. 55 against the Defendants identified on Schedule A, with the exception of a certain Defendant[1] (collectively, the "Defaulting Defendants"), based on Plaintiff's action for Trademark Infringement and Counterfeiting (Count I), False Designation of Origin, Passing Off and Unfair Competition (Count II), Violation of Illinois Uniform Deceptive Trade Practices Act (Count III), and Copyright Infringement (Count IV).

Iron Maiden Holdings, Ltd. is a company having its principal place of business in the United Kingdom. It is associated with Iron Maiden, an English metal band formed in Leyton, East London, in 1975, by Steve Harris. Iron Maiden is one of the most influential and revered rock bands of all time and helped spawn an entire genre of music.

---

[1] IMH's Motion for Entry of Default and Default Judgment does not apply to the following Defendants: MakayaShirts.

1

Since the initial launch of Iron Maiden, products featuring the Iron Maiden Trademarks and Copyrights[2] (hereinafter referred to as the "Iron Maiden Products") have enjoyed substantial success, which has led to significant infringement of the Iron Maiden Trademarks and Copyrights. This action was filed to combat online trademark and copyright infringers who trade upon Plaintiff's valuable trademarks and copyrights by selling and/or offering for sale products in connection with Plaintiff's federally registered Iron Maiden Trademarks, and unauthorized and/or counterfeit products derived from copyrighted subject matter created by IMH featuring the Iron Maiden Copyrights. IMH filed this action on February 4, 2022, alleging, among other claims, federal trademark and copyright infringement, and seeks statutory damages and injunctive relief. Docket Entry [8]. On February 14, 2022, this Court granted IMH's *Ex Parte* Motion for Entry of a Temporary Restraining Order ("TRO") [15], and subsequently converted the TRO into a Preliminary Injunction on March 23, 2022. [30].

Pursuant to Federal Rule of Civil Procedure 55(a) and (b)(2), IMH now moves this Court for an Order entering default and default judgment finding that Defaulting Defendants are liable on all counts of IMH's Complaint. [8] Fed. R. Civ. P. 55(a) and (b)(2). IMH further seeks an award of statutory damages against each of the Defaulting Defendants as authorized by 15 U.S.C. § 1117(c)(2) for willful trademark counterfeiting, and as authorized by 17 U.S.C.§ 504(c)(2) for willful infringement of the Iron Maiden Copyrights. IMH also seeks entry of a permanent injunction prohibiting Defaulting Defendants from selling unauthorized Iron Maiden Products, using the Iron Maiden Trademarks without authorization, and reproducing, distributing copies of, making derivative works of, or publicly displaying the Iron Maiden Copyrights, and an Order that all assets in Defaulting Defendants' financial accounts, including those operated by e-commerce

---

[2] True and correct copies of Plaintiff's Trademark and Copyright Registrations were respectively filed as Exhibits 1 and 2 to the Complaint.

platforms and payment processors such as eBay, Inc. ("eBay"), PayPal, Inc. ("PayPal"), Payoneer, Inc. ("Payoneer"), Stripe, Inc. ("Stripe"), ContextLogic, Inc. ("Wish"), Amazon Payments, Inc. ("Amazon"), Etsy, Inc. ("Etsy"), and Alipay US, Inc. ("Alipay") (collectively referred to herein as "Third-Party Providers"), as well as any newly discovered assets, be transferred to the Plaintiff. .

## ARGUMENT

### I. JURISDICTION AND VENUE ARE PROPER IN THIS COURT

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, the Federal Copyright Act, 17 U.S.C. § 101, *et seq.*, 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants, since each of the Defendants directly targets business activities toward consumers in Illinois and causes harm to Plaintiff's business within this Judicial District. *See* Complaint, [8], at ¶¶ 1-3; *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423-24 (7th Cir. 2010) (without benefit of an evidentiary hearing, plaintiff bears only the burden of making a *prima facie* case for personal jurisdiction; all of plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor).

The Defaulting Defendants targeted sales from Illinois residents by operating websites and/or online marketplace accounts ("Defendant Internet Stores" or Seller Aliases") that offer shipping to the United States, including Illinois; and, on information and belief, has sold counterfeit and/or infringing products (hereinafter referred to as the "Counterfeit Products") to residents within the United States, including Illinois. [8] at ¶ 21. As such, personal jurisdiction is

3

proper, since Defaulting Defendants are committing tortious acts in Illinois, engaging in interstate commerce, and wrongfully causing Plaintiff substantial injury in the State of Illinois. *Polyblank Designs Limited v. The Partnerships and Unincorporated Associations Identified on Schedule "A",* Case No. 18-cv-5846 (N.D. Ill. Dec. 12, 2018).

## II. PLAINTIFF HAS MET THE REQUIREMENTS FOR ENTRY OF DEFAULT

Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). On February 4, 2022, IMH filed its Complaint, alleging, among other claims, Trademark Infringement and Counterfeiting (Count I), False Designation of Origin, Passing Off and Unfair Competition (Count II), Violation of Illinois Uniform Deceptive Trade Practices Act (Count III), and Copyright Infringement (Count IV). [8]. The Defendants were properly served on March 9, 2022. [24]. Despite having been properly served with process, the Defaulting Defendants have ignored these proceedings and failed to plead or otherwise defend this action. *See* Declaration of Alison K. Carter ("Carter Declaration") at ¶ 2. Upon information and belief, the Defaulting Defendants are not active-duty members of the U.S. armed forces. *Id.* at ¶ 3. Twenty-one (21) days have passed since Defaulting Defendants were served, and no answer, or other responsive pleading, has been filed by any Defaulting Defendants identified on Schedule A to the Complaint. *See* Fed. R. Civ. P. 12(a)(1)(A). Accordingly, Plaintiff asks for entry of default against the Defaulting Defendants, which is appropriate, and consistent with previous similar cases in front of this Court.

Rule 55(b)(2) of the Federal Rules of Civil Procedure provides for a court-ordered default judgment. A default judgment establishes, as a matter of law, that Defendants are liable to Plaintiff on each cause of action alleged in the Complaint. *United States v. Di Mucci*, 879 F.2d 1488, 1497

(7th Cir. 1989). When the Court determines that a defendant is in default, the factual allegations of the Complaint are taken as true and may not be challenged, and the defendants are liable as a matter of law as to each cause of action alleged in the Complaint. *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994).

      **A.    Trademark Infringement and Counterfeiting, and Violation of the Illinois Uniform Deceptive Trade Practices Act**

To properly plead a claim of trademark infringement and counterfeiting, pursuant to the Lanham Act, a plaintiff must allege that: (1) its mark is distinctive enough to be worthy of protection; (2) defendants are not authorized to use the mark; and, (3) defendant's use of the mark causes a likelihood of confusion as to the origin or sponsorship of defendant's products. *See Neopost Industrie B.V. v. PFE Int'l Inc.,* 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005) (citing *Bliss Salon Day Spa v. Bliss World LLC,* 268 F.3d 494, 496-97 (7th Cir. 2001)). This is the same test that is used for a false designation of origin claim under the Lanham Act and claims under the Illinois Uniform Deceptive Trade Practices Act. *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.,* 188 F. 3d 427, 436 (7th Cir. 1999).

IMH alleged in its Complaint that: (1) the Iron Maiden Trademarks are distinctive; (2) Defaulting Defendants are not authorized to use the Iron Maiden Trademarks; (3) Defaulting Defendants' use of the Iron Maiden Trademarks causes a likelihood of confusion; and, (4) Defaulting Defendants have knowledge of Plaintiff's exclusive rights in and to the Iron Maiden Trademarks. [8] at ¶¶ 5, 37-45. Since the Defaulting Defendants have failed to respond, or otherwise plead in this matter, the Court must accept the allegations contained in Plaintiff's Complaint as true. *See* Fed. R. Civ. P. 8(b)(6); *Am. Taxi Dispatch, Inc., v. Am. Metro Taxi & Limo Co.,* 582 F. Supp. 2d 999, 1004 (N.D. Ill. 2008). Accordingly, Plaintiff respectfully requests entry of judgment with respect to Count I for willful infringement and counterfeiting of the Iron Maiden

5

Trademarks, and willful violation of the Section 43 of the Lanham Act, 15 U.S.C. § 1125, against the Defaulting Defendants.

Defendants have engaged in acts violating Illinois law including, but not limited to: passing off their unauthorized products as those of Plaintiff; causing a likelihood of confusion and/or misunderstanding as to the source of Defaulting Defendants' goods and products; causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine Iron Maiden Products; representing that Defaulting Defendants' Counterfeit Products have Plaintiff's approval and/or are authorized and authentic Iron Maiden Products, when Defaulting Defendants' Counterfeit Products are not approved, authorized, and/or authentic; and, engaging in other conduct which creates a likelihood of confusion or misunderstanding of source among the public. [8] at ¶¶ 56-58. The foregoing acts of the Defaulting Defendants' constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq.*.

### B. False Designation of Origin

A plaintiff bringing a false designation of origin claim under 15 U.S.C. § 1125(a) must show that: (1) the plaintiff has a protectable trademark; and, (2) a likelihood of confusion will exist as to the origin of Defendant's Products. *See Johnny Blastoff, Inc*., 188 F. 3d at 436. This is the same test that is used for determining a trademark infringement claim under the Lanham Act. *See Neopost,* 403 F. Supp. 2d at 684.

Plaintiff alleged in its Complaint that Defaulting Defendants are using federally registered Iron Maiden Trademarks, without authorization, on or in connection with Counterfeit Products. [8] at ¶¶ 47-54. Defaulting Defendants' use of IMH's Iron Maiden Trademarks creates a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association of the Counterfeit Products with IMH. *Id.* Furthermore, by using Iron Maiden Trademarks on, or in connection with, the Counterfeit Products, Defaulting Defendants create a

6

false designation of origin and a misleading representation of fact as to the sponsorship of the Counterfeit Products. *Id*. As a result, Plaintiff respectfully requests entry of judgment with respect to Count II, for willful false designation of origin, passing off, and unfair competition against the Defaulting Defendants.

    **C.    Copyright Infringement**

Plaintiff, at all relevant times, has been the holder of the pertinent exclusive rights infringed by Defaulting Defendants, as alleged in the Complaint, including but not limited to the Iron Maiden Copyrights, including derivative works. [8] at ¶¶ 3, 60-70. The Iron Maiden Copyrights are the subject of multiple valid copyright registrations. *Id.* Defaulting Defendants had access to the Iron Maiden Copyrights through Plaintiff's normal business activities. *Id.* at ¶ 64. After accessing Plaintiff's work, Defaulting Defendants wrongfully created counterfeit and infringing copies of the Iron Maiden Copyrights without Plaintiff's consent and engaged in acts of widespread infringement. *Id*. Defaulting Defendants further infringed IMH's Iron Maiden Copyrights by making, distributing, and/or causing to be made, derivative works, and by producing and distributing unauthorized reproductions without IMH's permission. *Id.* at ¶ 65. Each Defaulting Defendant, without the permission or consent of the Plaintiff, sold products which infringe upon Plaintiff's Copyrights. Each Defaulting Defendant has violated, among others, Plaintiff's exclusive rights of reproduction and distribution. The actions of the Defaulting Defendants constitute an infringement of Plaintiff's exclusive rights protected under the Copyright Act (17 U.S.C. §101 *et seq*.). *Id.* at ¶ 66.

**III.    PLAINTIFF IS ENTITLED TO MONETARY DAMAGES AND INJUNCTIVE RELIEF**

The award of statutory damages serves dual interests, in that it is remedial in nature, but also intended to protect an important public interest. Given the broader economic losses and harm to the job market caused by counterfeiting, coupled with the possible dangers to consumers who

are intentionally mislead into purchasing low quality, counterfeit products, over the Internet, the present circumstances warrant the award of statutory damages to both penalize Defaulting Defendants, as well as to deter future violations.

IMH has invested substantial time, money, and effort in building up, promoting, and marketing the Iron Maiden Products, which feature the Iron Maiden Trademarks and Copyrights. The success of the Iron Maiden brand has resulted in its significant counterfeiting; so, IMH routinely investigates suspicious storefronts and listings on online marketplaces.

### A. Statutory Damages are Appropriate in this Case

Section 35 of the Lanham Act, 15 U.S.C. § 1117, provides monetary remedies for trademark infringement, unfair competition, and willful trademark dilution. Subsection 1117(a) allows for the recovery of: a defendant's profits; any damages sustained by the plaintiff; costs of the action; and, the plaintiff's attorney fees. Subsection 1117(b) applies with respect to violations that involve the intentional use of a known counterfeit mark, and it requires the court to treble the profits or damages referenced in subsection 1117(a) and to award reasonable attorney fees "unless the court finds extenuating circumstances."

While recovery under subsections 1117(a) and (b) is focused on a plaintiff's "actual damages," subsection 1117(c) provides an alternative to proving actual damages with respect to violations that involve the use of a counterfeit mark. A "counterfeit mark" is defined at 15 U.S.C. § 1116(d)(1)(B)(i) as, in relevant part:

> "a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered."

Subsection 1117(c) allows a plaintiff to seek statutory damages instead of actual damages. The option to recover statutory damages was provided in light of Congress' recognition that counterfeiters' records are frequently "nonexistent, inadequate, or deceptively kept[,] . . . making

8

proving actual damages in these cases extremely difficult if not impossible." S. Rep. No. 104-177, at 10 (1995). The ability to elect statutory damages can provide a powerful incentive for a trademark holder to pursue infringement litigation that might otherwise not be undertaken because of the inability to obtain information to support recovery.

Pursuant to the statutory damages provision of the Lanham Act, a plaintiff in a case involving the use of a counterfeit mark may elect to receive "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). When the counterfeiting is found to be willful, statutory damages may be awarded up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2).

While Section 1117(c) dictates the boundaries for statutory damages awards, it does not provide guidance on what factors a court should consider when determining an award within those boundaries. However, courts primarily consider the following factors when formulating a statutory damages award: (1) the plaintiff's difficulty (or impossibility) in proving their actual damages; (2) the circumstances of the counterfeit activity; (3) deterrence both defendant and other similarly situated sellers; (4) expenses saved and the profits reaped by the defendant from selling illegitimate products; (5) the revenues lost by the plaintiff due to defendant's counterfeiting; (6) the value of the plaintiff's trademark; (7) the willfulness of the defendant's conduct; (8) the defendant's cooperation in court proceedings, including whether or not the defendant appears); (9) whether the counterfeiting activity took place online; and, (10) whether there have been repeated violations of trademark laws by the defendant.

The Office of the U. S. Trade Representative issued findings which recognize in copyright law that reduced damages may be warranted to avoid impeding new creative works, *e.g.*, remixes – works created through changing and combining existing works to produce something new and

creative – as part of a trend of user generated content.[3] *Id*. at 98. However, in cases of willful infringement, such as before this Court, the same report finds that high statutory damages are warranted since "[t]hese circumstances present the clearest need for deterrence and punishment." *Id*. at 99. Moreover, this Report also highlighted disturbing trends in the marketing and distribution of counterfeit goods online, with escalating levels of counterfeit sales online including an increase in the services that support such operations. *Id.* With an estimated 15% increase in online sales of counterfeit goods last year, the economic toll of counterfeiting on governments, businesses, and consumers is disturbing.

In recent years, counterfeiters evolved from a traditional brick-and-mortar distribution model to direct to consumer sales through the Internet. As such, counterfeiters can reach a much wider audience with little additional investment. Due to this reach, Courts have regularly imposed steeper penalties on those who sold counterfeit merchandise online compared to brick and mortar counterparts.[4] Accordingly, a significant consideration should be whether infringing sales were made over the Internet, with the rationale being that sales over the Internet increase the amount of an award because use of the Internet made the infringement widely available.

Additionally, the lack of information regarding Defaulting Defendants' sales and profits makes statutory damages particularly appropriate for default cases like the instant case. *See Petmed Express, Inc. v. medpets.com, Inc.,* 336 F. Supp. 2d 1213, 1220 (S.D. Fla. 2004). Likewise, Courts have recognized that statutory damages should be awarded without requiring an evidentiary hearing. *See Lorillard Tobacco Co.,* 2008 U.S. Dist. LEXIS 31761, at *11.

---

[3] The Office of the U. S. Trade Representative, Special 301, *Out-of-Cycle Review of Notorious Markets for 2015* (December 2015).
[4] *See generally* INT'L TRADEMARK ASS'N, *Addressing the Sale of Counterfeits on the Internet* (2017), *available at* https://www.inta.org/Advocacy/Documents/2018/Addressing_the_Sale_of_Counterfeits_on_the_Internet_021518.pdf (explaining international impact of Internet on counterfeit industry).

### B. Defaulting Defendants' Counterfeiting Was Willful

As alleged in Plaintiff's Complaint, Defaulting Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine Iron Maiden Products. [8] at ¶ 24. In doing so, Defaulting Defendants' counterfeiting was willful. "Willful infringement may be attributed the defendant's actions where he had knowledge that his conduct constituted infringement or where he showed a reckless disregard for the owner's rights." *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, at *19-20. As such, knowledge need not be proven directly, but can be inferred from a defendant's conduct. *Id*. In the instant case, Defaulting Defendants clearly had knowledge that their activities constituted infringement or at least a reckless disregard for IMH's rights in its Iron Maiden Trademarks, especially given IMH's extensive promotional efforts discussed in the Complaint. [8]. Defendants also took great pains to hide their identities in an attempt to avoid being held accountable for their counterfeiting activities. Finally, this Court has deemed counterfeiting conduct to be willful when defendants default. *See Wham-O Holding, Ltd.*, No. 18-cv-05878 (N.D. Ill. Nov. 15, 2018); *Polyblank Designs,* No. 18-cv-5846 (N.D. Ill. Dec. 12, 2018).

### C. A High Statutory Damages Award for Trademark Counterfeiting is Appropriate and Just

Although 15 U.S.C. § 1117(c) contains the dollar range for possible statutory damage awards, the only guidance provided by the statute for how to determine a damage award within the statutory dollar range is "as the court considers just." 15 U.S.C. § 1117(c). Courts interpreting this section have analogized case law applying the statutory damage provision of the Copyright Act, 17 U.S.C. § 504(c). *See Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, at *10.

The Seventh Circuit's standard for awarding statutory damages for copyright infringement under 17 U.S.C § 504(c) is articulated in *Chi-Boy Music v. Charlie Club*, 930 F.2d 1224, 1229 (7th Cir. 1991). Under the *Chi-Boy* standard, a court awarding statutory damages is "not required to

11

follow any rigid formula," but instead "enjoys wide discretion." *Id*. In computing the award amount, a court may consider factors such as "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent." *Id*. Courts in this district have also considered the significant value of a plaintiff's brand and the efforts taken to protect, promote, and enhance that brand in determining the appropriate dollar figure for the award. *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, *16.

In addition, courts have awarded high damage amounts where a defendant's counterfeiting activities attracted wide market exposure through Internet traffic or advertisement. *See Coach, Inc. v. Ocean Point Gifts*, 2010 U.S. Dist. LEXIS 59003, *15-16 (D.N.J. Jun. 14, 2010) (high damage awards in counterfeit cases were "due in part to the wide market exposure that the Internet can provide"); *Burberry Ltd. v. Designers Imports, Inc.*, 2010 U.S. Dist. LEXIS 3605, *28-29 (S.D.N.Y. Jan. 19, 2010) (damages amount based, in part, on "Defendant's ability to reach a vast customer base through internet advertising.").

In similar cases involving willful Internet-based counterfeiting, this Court has awarded significant damages, including up to the maximum provided by law, to the plaintiff to serve the purposes of: (1) deterring the defendant and others similarly situated from bringing counterfeit goods into commerce; (2) compensating the plaintiff for damages caused by defendant's infringement; and, (3) punishing the defendant appropriately for counterfeiting activities. *See, e.g., Burberry Limited, et al. v. The Partnerships, et al,* No. 1:14-cv-08220 (N.D. Ill. Dec. 11, 2014) (unpublished) (Docket Nos. [44, 45]) (awarding $2,000,000 in statutory damages per defendant); *Oakley, Inc. v. The Partnerships, et al.,* No. 1:13-cv-02958 (N.D. Ill. June 17, 2013) (unpublished) (Docket Nos. [36, 37]) (awarding $2,000,000 in statutory damages per defendant). Given the Court's discretion in determining the appropriate statutory damages award within the statutory limits of 15 U.S.C. § 1117(c), IMH respectfully requests the Court's entry of an award of five

hundred thousand dollars ($500,000) per Defaulting Defendant for willful trademark counterfeiting.

Additionally, the remedy imposed under the statute must provide a sufficient deterrent effect to ensure that the guilty party will not engage in further infringing conduct. *Sands, Taylor & Wood v. Quaker Oats Co.,* 34 F.3d 1340, 1348 (7th Cir. 1994). For example, in *Phillip Morris USA Inc. v. Marlboro Express*, the Court stated that due to, "the size of the potential profit given the quantities of [counterfeit goods] involved, and the need for a substantial deterrent to future misconduct by defendants and other counterfeit traffickers ... plaintiff is entitled to the maximum statutory award under 15 U.S.C. § 1117(c)(2)." 2005 U.S. Dist. LEXIS 40359, at *28 (E.D.N.Y. Aug. 26, 2005). Finally, in determining an appropriate damage award, this Court should be guided by the *Lorillard* case, and consider the "significant value of [the Iron Maiden] brand and the efforts taken to protect, promote and enhance that brand." *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, at *16. IMH has invested a significant amount of time, money, and effort in promoting and marketing the Iron Maiden Trademarks. Thus, IMH's request for a high statutory damages award should be given favorable consideration in view of the value of the Iron Maiden Trademarks and brand and the extensive steps being taken by IMH to protect, promote, and enhance it.

### D. IMH is Entitled to Statutory Damages for Copyright Infringement

Pursuant to the statutory damages provision of the Copyright Act, 17 U.S.C. § 504(c), a plaintiff in a case involving copyright infringement may elect to receive statutory damages of "not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). When the copyright infringement is found to be willful, 17 U.S.C. § 504(c)(2) provides for statutory damages "to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2).

As mentioned above, the Seventh Circuit's standard for awarding statutory damages for copyright infringement under 17 U.S.C § 504(c) is articulated in *Chi-Boy Music,* 930 F.2d 1224.

Further, in the Seventh Circuit, infringing conduct is willful where the defendant knows the conduct constitutes infringement or where a reckless disregard of the copyright owner's rights in shown. *See Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 511 (7th Cir. 1994). As such, knowledge need not be proven directly, but can be inferred from a defendant's conduct. *In re Aimster Copyright Litigation*, 334 F.3d 643, 650 (7th Cir. 2003) (Finding that "[w]illful blindness is knowledge, in copyright law.").

In this case, Defaulting Defendants clearly had knowledge that their activities constituted infringement, or at least a reckless disregard for IMH's rights in the Iron Maiden Copyrights. Additionally, in similar cases involving willful copyright infringement, courts have awarded significant damages, including up to the maximum provided by law. *See Monster Energy Company v. Chen Wensheng, et al.;* No. 1:15-cv-4166 (N.D. Ill. Jul. 27, 2015) (unpublished) (Docket No. [85]) (awarding $50,000 in statutory damages per defendant for willful copyright infringement); *Monster Energy Company v. Xianda Lin, et al.;* No. 1:16-cv-0622 (N.D. Ill. Mar. 14, 2016) (unpublished) (Docket No. [51]) (awarding $150,000 in statutory damages per defendant for willful copyright infringement). Thus, IMH's request for a statutory damages award in the amount of one hundred thousand dollars ($100,000) per Defaulting Defendant for willful copyright infringement of the Iron Maiden Copyrights is appropriate.

E.  **Plaintiff is Entitled to Permanent Injunctive Relief**

In addition to the foregoing relief requested, Plaintiff respectfully requests entry of a permanent injunction enjoining Defaulting Defendants from infringing or otherwise violating IMH's registered intellectual property rights in and to the Iron Maiden Trademarks and Copyrights, including at least all injunctive relief previously awarded by this Court to IMH in the TRO and Preliminary Injunction. Injunctive relief should also be granted so that the Plaintiff may quickly take action against any new websites and online marketplace accounts that are identified,

found to be linked to Defaulting Defendants, and which are selling unauthorized Iron Maiden Products.

## IV. CONCLUSION

IMH respectfully requests that the Court: enter default and grant default judgment against each Defaulting Defendant; award statutory damages in the amount of five hundred thousand dollars ($500,000) per Defaulting Defendant for willful trademark counterfeiting, pursuant to 15 U.S.C. § 1117(c); award one hundred thousand dollars ($100,000) per Defaulting Defendant for willful copyright infringement, pursuant to 17 U.S.C. § 504(c); enter a permanent injunction order, prohibiting Defaulting Defendants from selling Counterfeit Products, using the Iron Maiden Trademarks and/or Copyrights without authorization, and reproducing, distributing copies of, making derivative works of, or publicly displaying the Iron Maiden Copyrights; and, enter an order directing any third-party online marketplaces and payment processors in privity with the Defaulting Defendants to transfer all assets in Defaulting Defendants' financial accounts to Plaintiff.

Dated: April 26, 2022

Respectfully submitted,

*/s/ Alison Carter*
Ann Marie Sullivan
Alison Carter
AM Sullivan Law, LLC
1440 W. Taylor St., Suite 515
Chicago, Illinois 60607
Telephone: 224-258-9378
E-mail: akc@amsullivanlaw.com

***ATTORNEYS FOR PLAINTIFF***

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 26, 2022, a true and correct copy of the above and foregoing document was: electronically filed, with the Clerk of the Court using the CM/ECF system; electronically published on a website to which the Defendants have been directed pursuant to the Service of Process; and emailed to all email addresses identified or provided for Defendants by the Defendants or third-parties, which includes a link to said website.

*/s/ Alison Carter*
Alison Carter